# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| CLAY MAHANEY, | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) Case No. CIV-21-113-SPS |
| KILOLO KIJAKAZI,[1] Acting Commissioner of the Social Security Administration, | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Clay Mahaney requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision is hereby AFFIRMED.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and

---

[1] On July 9, 2021, Kilolo Kijakazi became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Kijakazi is substituted for Andrew M. Saul as the Defendant in this action.

work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[2] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), he is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that he lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account his age, education, work experience, and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was fifty-six years old at the time of the administrative hearing (Tr. 39, 211). He has a high school education and has previously worked as a police officer and police chief (Tr. 73, 226). The claimant alleges that he has been unable to work since February 12, 2014, due to a ruptured disc in his lower back, a torn rotator cuff on both shoulders, a torn meniscus of the left knee, and torn PCL of the right knee (Tr. 225).

### Procedural History

On July 10, 2018, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. His application was denied. ALJ James Stewart conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated June 2, 2020 (Tr. 15-32). The Appeals Council denied review, so the ALJ's opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

### Decision of the Administrative Law Judge

The ALJ made his decision at steps four and five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), except that he could not climb ladders/ropes/scaffolds or overhead reach on the left side, but that he could occasionally stoop, crouch, crawl, kneel, balance, climb ramps/stairs, push/pull with the upper extremities up to ten pounds, and overhead reach on the right side (Tr. 20-21) The ALJ

then concluded that the claimant could return to his past relevant work as a police chief (Tr. 30-31). Alternatively, he concluded that the claimant was not disabled because there was other work he could perform, *e. g.*, desk officer, chief jailer, and police clerk (Tr. 32).

## Review

The claimant contends that the ALJ erred by: (i) finding he could return to his past relevant work as a police chief, and (ii) failing to identify jobs in conformance with his assigned RFC. The Court finds that any error here is harmless, and the decision of the Commissioner should therefore be affirmed.

At step two of the sequential evaluation, the ALJ found that the claimant had the severe impairments of degenerative disc disease of the lumbar spine, dysfunction of major joint with left rotator cuff tear, diabetes mellitus type II with neuropathy, and obesity, as well as the medically determinable impairments of small-moderate left foot calcaneal spurs of the left foot, hypertension, fatigue, osteoarthritis of the left knee, and anxiety (Tr. 18). In discussing the claimant's medically determinable impairment of anxiety, the ALJ found that the claimant had mild limitation in three functional areas (understanding, remembering, and applying information; interacting with others; and adapting or managing oneself) and no limitation in the area of concentration, persistence, and pace (Tr. 19).

At the administrative hearing, the claimant testified as to his impairments. The ALJ then called on a vocational expert ("VE") to testify as to the claimant's past work experience and possible jobs he could perform with his limitations. As part of this, the ALJ asked the claimant about whether his former jobs as police chief included having to be on his feet more than two hours a day, even if not every day, and the claimant responded

that it did (Tr. 72-73). There was no further discussion or testimony as to the physical or mental requirements of the claimant's past relevant work. The ALJ then asked the VE to classify the claimant's past work, and she identified, *inter alia*, the job of police chief, DICOT § 375.117-010, which is skilled, with a "specific vocational preparation" number of 9 (Tr. 73). She noted that the job is classified as sedentary but that the claimant performed it at the light classification (Tr. 73). The ALJ then posed a series of hypothetical questions requiring the VE to assume various limitations and identify the work someone with such limitations could perform. First, the ALJ posited an individual with the age and education of the claimant with:

> a full range of light work as defined in social security rules and regulations which would be 20 C.F.R. section 404.1567(b) except as follows. No climbing of ladders, ropes, or scaffolds; stooping, crouching, crawling, kneeling, balancing, and climbing of ramps or stairs can be done occasionally. No overhead reaching with the left side. Overhead reaching of the right side is limited to occasional. Pushing, pulling with the upper extremities can be done occasionally with a reaching limit to 10 pounds.

(Tr. 74). The ALJ clarified that he needed the overhead reaching limitation to be based on the VE's experience because overhead reaching is not necessarily covered by the Dictionary of Occupational Titles ("DICOT") (Tr. 74). The VE testified that such a person could perform the past relevant work of police chief (Tr. 75-76). The ALJ also asked her to identify additional unskilled jobs such a person could perform, and the VE identified three light, unskilled jobs (Tr. 76-77).

The ALJ then posited a second hypothetical, which was "the same as the first hypothetical only the exertional capabilities are reduced to sedentary as defined in social security rules and regulations including 20 C.F.R. section 404.1567(a), instead of light."

(Tr. 77). The VE again identified the claimant's past work as police chief (Tr. 77). The ALJ noted that there is a question of transferable skills for individuals over 55 for sedentary work, and the VE identified the transferable skills of maintaining records, personnel management, report writing, and customer service (Tr. 77-78). She then identified jobs responsive to the second hypothetical with those transferable skills: desk officer, DICOT § 375.137-014, a skilled job with an SVP of 7, and 4,000 jobs nationally; chief jailer, DICOT § 372.167-018, a skilled job with an SVP of 7, and 28,000 jobs nationally; and police clerk, a skilled job with an SVP of 6, and 6,500 jobs nationally (Tr. 78-79). Following a third hypothetical, the ALJ asked the VE if the testimony she gave regarding overhead reaching and push/pull limitations was based on her professional experience, and the VE stated, "Yes, judge." (Tr. 80).

The claimant's attorney asked the VE an additional hypothetical that included limitations regarding handling and fingering, as well as a limitation to "understanding, delivering, and carrying out detailed but not complex tasks" (Tr. 80-81). The VE testified that the limitation to detailed but not complex jobs tasks would eliminate the jobs identified at the sedentary level, including the claimant's past relevant work (Tr. 81).

In his written decision, the ALJ determined that the claimant's RFC included the limitations from the second hypothetical described above (Tr. 20-21). He then found that, based on the VE's testimony, the claimant could perform the work of police chief as generally performed (Tr. 31). The ALJ then proceeded alternately to step five, finding that there was other work the claimant could perform with his transferable work skills: desk officer, chief jailer, and police clerk (Tr. 31-32). The ALJ specifically found that the chief

jailer job alone, with 28,000 jobs nationally, existed in sufficient numbers to satisfy step five (Tr. 32). The ALJ then stated that the VE's testimony as to additional breaks, reaching, and pushing/pulling was based on her professional experience (Tr. 32). Having identified past relevant work and additional jobs at step five that the claimant could perform, he thus concluded that the claimant was not disabled (Tr. 32).

The claimant asserts that he can neither return to his past relevant work identified at step four, nor perform the jobs identified at step five. Step four has three distinct phases. At step four, the ALJ must: (i) establish the claimant's RFC, then (ii) determine the demands of his past relevant work (both physical and mental), and (iii) ultimately decide if the RFC enables the claimant to meet those demands. *See, e. g., Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). As to his step four argument, the claimant contends that the ALJ failed to properly account for his nonsevere mental impairment of anxiety because he found at step three that the claimant had mild limitations in three of the four broad functional areas, which precluded past work because it was "skilled" work.

At phase two of step four in this case, the ALJ only elicited evidence from the claimant about the standing requirements of the claimant's work as police chief, and no other postural, manipulative, or mental demands, nor did he elicit evidence from the VE other than her testimony as to its general classification to sedentary but that the claimant performed it as light work. The claimant contends this was error because the ALJ did not sufficiently develop the evidence regarding his ability to perform the mental demands of skilled work. Of note, "[t]he social security ruling on assessing a claimant's RFC cautions that '[t]he adjudicator must remember that the limitations identified in the 'paragraph B'

. . . criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process.'" *Vigil v. Colvin*, 805 F.3d 1199, 1203 (10th Cir. 2015) (*quoting* Soc. Sec. Rul. 96–8p, 1996 WL 374184, at *4 (July 2, 1996)). The Court further notes that the claimant's argument is not attacking the RFC assigned to him at step four, but whether at step four the ALJ has sufficiently addressed the Plaintiff's ability to perform the mental demands of his past skilled work. Admittedly, "[t]he finding that Plaintiff's mental impairments are not severe is a finding that her mental impairment do not have more than a minimal effect on her ability to do *basic* work activities. [However, t]he abilities to understand and remember detailed instructions, to carry out detailed instructions, or to set realistic goals or make plans independently of others are *not basic work activities*." *Evalyne Kathleen H. v. Kijakazi*, 2022 WL 539104, at *7 (D. Kan. Feb. 23, 2022) (emphasis added) (*citing* 20 C.F.R. § 404.1522(b); POMS DI 25020.010(B)(4)).

The question in this case, then, is whether the ALJ must specifically make findings as to whether a claimant can perform the mental demands of past skilled work in light of a nonsevere but medically determinable mental impairment causing mild limitations in one or more of the four broad functional areas. District courts in this Circuit appear divided on the question, but this Court is inclined to find an error here. *See Evalyne Kathleen H.*, 2022 WL 539104, at 720 ("To the extent the Commissioner may be arguing that a mental impairment which is not severe could not preclude semi-skilled or skilled work per se, that argument does not square with the definition of a not severe impairment: 'An impairment or combination of impairments is not severe if it does not significantly limit your physical

or mental ability to do basic work activities.'") (*quoting* C.F.R. § 404.1522(a)). *But see Valdez v. Berryhill*, 2017 WL 5988652, at *3 (D. Colo. Dec. 4, 2017) ("There is no legal support for Ms. Valdez's contention that the ALJ's failure to account for Ms. Valdez's mild limitations transformed from harmless error into reversible error because of the skill-level the ALJ determined Ms. Valdez can perform."). *See also Calvin W. v. Saul*, No. 2021 WL 27010, at *4 (D. Utah Jan. 4, 2021) ("The ALJ found that Plaintiff's mental impairments caused no more than mild limitation in any of the functional areas and, therefore, were non-severe. This conclusion is well supported by the evidence set out by the ALJ. However, the ALJ failed to discuss the mental demands of Plaintiff's past relevant work, as required. Further, the ALJ's conclusion that Plaintiff's mental limitations would not alter his ability to perform skilled work is completely conclusory and lacks the specific findings needed, which is insufficient. As with the reaching limitation, no mental impairments were presented to the vocational expert. Thus, the vocational expert's testimony cannot provide substantial evidence for the ALJ's conclusion. As a result, there is no substantial evidence to support the ALJ's finding. Therefore, this case must be remanded for further consideration as to whether Plaintiff's mental impairments affect his ability to perform his past relevant work."); *Maher v. Berryhill*, 2017 WL 4296411, at *2 (E.D. Okla. Aug. 30, 2017) ("But for the skilled nature of Claimant's past relevant work, the ALJ's manner of addressing Claimant's non-severe mental impairment might have sufficed. Because of the underlying requirements of the job, however, the ALJ must address the effect of Claimant's mental restrictions upon his ability to perform his past work.") (*citing Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996) (*report and recommendation adopted*, 2017 WL

4295206 (E.D. Okla. Sept. 27, 2017)). The Court thus finds that the ALJ erred at *step four* when he failed to completely ascertain the demands of the claimant's past relevant work (both physical *and* mental), leading to an incomplete determination as to whether the RFC enables the claimant to meet *those* demands.

But even assuming *arguendo* that the ALJ did err in failing to address the skill level of work the claimant could perform in light of his nonsevere mental impairments as to his *past relevant work*, it is nevertheless harmless error because the claimant could still perform all three jobs identified at *step five* based on the assigned RFC. The claimant makes no arguments as to mental limitations at step five, and instead asserts that because the jobs require frequent to occasional reaching under the DICOT listings, *see* DICOT §§ 375.137-014, 372.167-018, 375.362-010, an impermissible conflict exists because he is limited to only occasional reaching overhead on the right and no overhead reaching on the left side. Under Social Security Ruling 00-4p, "When vocational evidence provided by a VE or VS is not consistent with information in the DOT, the [ALJ] must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled. The [ALJ] will explain in the determination or decision how he or she resolved the conflict. The [ALJ] must explain the resolution of the conflict *irrespective of how the conflict was identified*." 2000 WL 1898704, at *4 (Dec. 4, 2000) [emphasis added].

Here, the VE specifically based her testimony on her own professional experience when it came to, *inter alia*, overhead reaching limitations, because, as the ALJ repeatedly noted, the DICOT does not account for differences between overhead reaching and

-10-

reaching in all directions. Furthermore, the Tenth Circuit has held that, "even a job requiring frequent reaching does not necessarily require more than occasional *overhead* reaching." *Segovia v. Astrue*, 226 Fed. Appx. 801, 804 (10th Cir. 2007) ("The VE was aware of Ms. Segovia's limitations on overhead reaching[.] In these circumstances, the VE's testimony . . . clarifies how [] broad characterizations apply to this specific case."). Accordingly, in light of the testimony from the administrative hearing, the jobs identified at step five do not conflict with the claimant's RFC and any error with regard to the police chief job is therefore classified as harmless error. *See, e. g., Stokes v. Astrue*, 274 Fed. Appx. 675, 684 (10th Cir. 2008) (finding any error on whether claimant could perform job was harmless error since there were still two jobs claimant could perform and no "reasonable factfinder could have determined that suitable jobs did not exist in significant numbers in either the region where Ms. Stokes lives or several regions of the country.").

The ALJ appropriately gave reasons for the RFC determination and ultimately found that the claimant was not disabled. *See Hill v. Astrue*, 289 Fed. Appx. 289 293 (10th Cir. 2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'") (*quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004)). This was "well within the province of the ALJ." *Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir. 2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within

the province of the ALJ.") (*citing* 20 C.F.R. §§ 404.1527(e)(2); 404.1546; 404.1545; 416.946). The essence of the claimant's appeal is that the Court should reweigh the evidence and reach a different result, which the Court simply may not do. *See, e. g., Casias*, 933 F.2d at 800. Accordingly, the decision of the Commissioner should be affirmed.

## Conclusion

In summary, the Court finds that correct legal standards were applied by the ALJ, and the decision of the Commissioner is therefore supported by substantial evidence. The decision of the Commissioner of the Social Security Administration is accordingly hereby AFFIRMED.

**DATED** this 1st day of August, 2022.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**